1  KRISTEN CLARKE
   Assistant Attorney General
2  Civil Rights Division

3  GARY M. RESTAINO
   United States Attorney
4  District of Arizona

5  T. CHRISTIAN HERREN, JR. (AL Bar No. ASB6671R63T)
   RICHARD A. DELLHEIM (NY Bar No. 2564177)
6  EMILY R. BRAILEY (DC Bar No. 1684650)
   L. BRADY BENDER (DC Bar No. 1615749)
7  Attorneys, Voting Section
   Civil Rights Division
8  U.S. Department of Justice
   4CON – Room 8.1815
   950 Pennsylvania Avenue, NW
9  Washington, DC 20530

10 Tel.: (202) 353-5724 / Fax: (202) 307-3961
   Email:
11 Chris.Herren@usdoj.gov
   Richard.Dellheim@usdoj.gov
12 Emily.Brailey@usdoj.gov
   Laura.Bender@usdoj.gov
13 *Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| United States of America, | |
|---|---|
| Plaintiff, | No. _____ |
| v. | COMPLAINT |
| State of Arizona; and Katie Hobbs, in her official capacity as Arizona Secretary of State, | |
| Defendants. | |

# **COMPLAINT**

The United States of America, plaintiff herein, alleges:

1. In March 2022, Arizona enacted House Bill 2492 ("HB 2492"), omnibus legislation that imposes several restrictions on eligible U.S. citizens' ability to register and to vote.

2. In this action, the United States challenges certain provisions of HB 2492 on the basis that they violate Section 6 of the National Voter Registration Act of 1993 ("NVRA" or the "Act"), 52 U.S.C. § 20505, and Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101 ("Section 101").

3. One of HB 2492's provisions violates the NVRA as interpreted by the U.S. Supreme Court in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) (*ITCA*). In that case, the Court rejected an earlier attempt by Arizona to impose a documentary proof of citizenship ("DPOC") requirement on applicants who register to vote using the mail voter registration form prescribed by the U.S. Election Assistance Commission (called the "Federal Form").

4. HB 2492 contravenes settled law insofar as it requires Arizona registrants using the Federal Form to also submit burdensome documentary proof of U.S. citizenship to local election officials if those officials cannot otherwise confirm the applicant's citizenship status.

5. The NVRA prohibits this: If a citizen submits a valid and complete Federal Form, the Act requires states to accept and use that Form to register an applicant for all

federal elections. The NVRA specifically precludes any state requirement that an applicant seeking to register to vote using a Federal Form also submit DPOC.

6. Specifically, HB 2492 unlawfully impacts both of Arizona's two classes of registered voters: those voters who are entitled to vote only in federal elections ("federal-only voters") and those who are entitled to vote in both state and federal elections ("full-ballot voters").

7. "Federal-only voters" are those who register to vote using the Federal Form—a uniform federal form states like Arizona must use to register voters for federal elections.

8. HB 2492 also violates the "Materiality Provision" of Section 101 of the Civil Rights Act of 1964, which bars officials from rejecting voter registration applications based on errors or omissions that are not material to establishing an individual's qualifications to vote. 52 U.S.C. § 10101(a)(2)(B).

9. The Federal Form already includes an attestation demonstrating a prospective voter's citizenship, which Arizona continues to accept for in-person voting in congressional elections. Whether a prospective voter is able to provide DPOC, in addition to this attestation, is not material to whether that voter is qualified to vote by mail or in presidential elections. But HB 2492 denies applicants using the Federal Form the right to vote by mail or in presidential elections unless they provide DPOC.

10. HB 2492 also requires election officials to reject voter registration applications even when a voter provides DPOC with the application if the voter fails to also check a box indicating that the voter is a citizen. Whether voters who have already

proven that they are U.S. citizens fail to check this box, through error or omission, is not material to establishing their qualifications to vote.

11. And under HB 2492, election officials will reject any State voter registration form that fails to include the prospective voter's place of birth. Birthplace has never been a required indicator of citizenship on Arizona voter registration forms. And for good reason: that information is not material to establishing a voter's qualifications because of naturalization and expatriation patterns, among other factors.

12. The Attorney General of the United States brings this action for declaratory and injunctive relief pursuant to Section 6 of the NVRA, 52 U.S.C. § 20505, and Section 101, 52 U.S.C. § 10101.

**JURISDICTION AND VENUE**

13. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a) and 52 U.S.C. §§ 20510(a) and 10101(d).

14. Venue is proper in this Court under 28 U.S.C. §§ 82 and 1391(b).

**PARTIES**

15. The NVRA authorizes the Attorney General of the United States to bring civil actions on behalf of the United States of America in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out the Act. 52 U.S.C. § 20510(a). The Civil Rights Act of 1957 authorizes the Attorney General to file a civil action on behalf of the United States of America seeking injunctive, preventive, and permanent relief for violations of Section 101. 52 U.S.C. § 10101(c).

16. Defendant State of Arizona is one of the states of the United States of America. The State of Arizona is subject to the requirements of the NVRA. 52 U.S.C. § 20502(4). The State is also subject to Section 101. 52 U.S.C. § 10101(c) (authorizing a state to be joined as a defendant when any state official or subdivision is alleged to have violated Section 101).

17. Defendant Katie Hobbs is the Arizona Secretary of State. The Arizona Secretary of State is the chief state election officer. Ariz. Const. art. V, § 9; Ariz. Rev. Stat. § 16-142. In this role, Secretary Hobbs is responsible for coordinating state responsibilities under the NVRA, Ariz. Rev. Stat. § 16-142(A)(1), and helping enforce HB 2492, *see* HB 2492 § 7 (adding Ariz. Rev. Stat. § 16-143). Secretary Hobbs is sued in her official capacity.

## **LEGAL FRAMEWORK**

**Section 6 of the NVRA**

18. Section 6 of the NVRA requires Arizona to "accept and use" a complete and valid Federal Form to register an applicant to vote in all federal elections. 52 U.S.C. § 20505(a)(1).

19. Under the NVRA, federal elections include both congressional and presidential elections. *Id.* § 20502(2); *see also id.* § 30101(3).

20. The Election Assistance Commission ("EAC") develops the Federal Form and prescribes its contents in consultation with the chief election officers of the states. *Id.* § 20508(a).

1  21. The Federal Form contains "only such identifying information (including

2  the signature of the applicant) and other information (including data relating to previous

3  registration by the applicant), as is necessary to enable the appropriate State election

4  official to assess the eligibility of the applicant and to administer voter registration and

5  other parts of the election process." *Id.* § 20508(b)(1).

6  22. The Federal Form specifies that an applicant must be a United States citizen

7  to vote in federal elections, requires the applicant to attest to the applicant's citizenship,

8  and requires the applicant to sign the form under penalty of perjury. *Id.* § 20508(b)(2).

9  23. The Federal Form does not require additional DPOC because that

10  information is not necessary to prove citizenship.

11  24. As long as an individual completes the Federal Form and meets all its

12  requirements, and is otherwise eligible to vote, states must register that individual to vote

13  in all federal elections in the state, including presidential elections.

14  **The Materiality Provision of the Civil Rights Act of 1964**

15  25. The Materiality Provision of Section 101 prohibits any person "acting

16  under color of law" from "deny[ing] the right of any individual to vote in any election

17  because of an error or omission on any record or paper relating to any application,

18  registration, or other act requisite to voting, if such error or omission is not material in

19  determining whether such individual is qualified under State law to vote in such

20  election." 52 U.S.C. § 10101(a)(2)(B).

**FACTUAL ALLEGATIONS**

**Arizona Demographics**

26. According to 2016-2020 American Community Survey ("ACS") estimates, more than 5 million Arizona citizens of voting age are potentially eligible to vote. Of these potential voters, nearly 4.3 million are registered to vote. Ariz. Sec'y of State, State of Arizona Registration Report: 2022 April Voter Registration (April 1, 2022), *available at* Perma | azsos.gov.

27. On information and belief, thousands of these voters are registered to vote in federal elections only.

28. The 2016-2020 ACS estimates that Arizona's population includes 428,788 naturalized citizens (5.9%), 101,135 native citizens born outside of the United States (1.4%) (including those born in Puerto Rico or U.S. island areas), and 3,285,498 native citizens born in another state in the United States (45.7%).

**Arizona House Bill 2492**

29. Arizona Governor Doug Ducey signed HB 2492 into law on March 30, 2022, and it goes into effect on January 1, 2023. HB 2492 amends several sections of Arizona's election code relating to voter registration.

30. A prospective voter in Arizona must "be a citizen of the United States of the age eighteen years or over, and shall have resided in the state" for a prescribed period of time. Ariz. Const. art VII, § 2, cl. A. Prospective voters must also be able to write their names or make a mark (unless unable to do so due to physical disability), have not been convicted of treason or a felony (unless their rights have been restored), and have

not been adjudicated to be incapacitated.  Ariz. Rev. Stat. § 16-101.

31. HB 2492 requires more.  It obliges prospective voters applying for voter registration using the Federal Form to submit DPOC if election officials are unable to confirm the applicant's citizenship by way of steps mandated by HB 2492.  *See* HB 2492 § 4 (amending Ariz. Rev. Stat. § 16-121.01).

32. HB 2492 further requires all voter registration applications, including those accompanied by satisfactory DPOC, to include "a checkmark or other appropriate mark in the 'Yes' box next to the question regarding citizenship," or they will be rejected.  *Id.*

33. HB 2492 also requires prospective voters applying for voter registration using an Arizona-specific form ("State Form") to list their birthplace.  *Id.*

34. Finally, voters who are already registered to vote using the Federal Form must nonetheless provide DPOC if they wish to vote in presidential elections or by mail. HB 2492 § 5 (adding Ariz. Rev. Stat. § 16-127).

35. HB 2492 does not impose DPOC requirements on federal-only voters who wish to vote in congressional elections in person.

**HB 2492's DPOC Requirements**

36. HB 2492 requires election officials to take additional actions concerning the citizenship of individuals who register to vote using the Federal Form by using "all available resources to verify the citizenship status of the applicant."  HB 2492 § 4 (adding Ariz. Rev. Stat. § 16-121.01(D)).  At a minimum, officials must compare these applicants with the following list of databases, provided the county has access:

    a. The Department of Transportation databases of Arizona driver

1              licenses or nonoperating identification licenses;
2          b.  The Social Security Administration databases;
3          c.  The United States Citizenship and Immigration Services
4              Systematic Alien Verification for Entitlements Program, if
5              practicable;
6          d.  A National Association for Public Health Statistics and
7              Information Systems Electronic Verification of Vital Events
8              System; and
9          e.  Any other state, city, town, county, or federal database and any
10             other database relating to voter registration to which the county
11             recorder or officer in charge of elections has access, including an
12             Electronic Registration Information Center database.

37. If election officials verify a Federal Form applicant's citizenship status, and the applicant is otherwise eligible to vote, then the applicant is registered to vote in federal elections only. *Id.* (adding Ariz. Rev. Stat. § 16-121.01(E)). If election officials obtain information alleging that the applicant is not a citizen, then the election officials must reject the application, notify the applicant of the rejection, and forward the application to the county attorney and State attorney general for investigation. *Id.*

38. But if election officials cannot verify the applicant's citizenship status, then they must take the additional step of notifying the applicant and the applicant must produce DPOC. *Id.*; Ariz. Rev. Stat. § 16-166(F) (listing HB 2492-mandated documents to prove citizenship).

39. If the applicant fails to produce DPOC, then the applicant cannot vote in a presidential election or by mail ballot. HB 2492 § 4 (adding Ariz. Rev. Stat. § 16-121.01(E)). The applicant can vote in congressional elections, but only by casting a ballot in person.

40. HB 2492 also prohibits any previously registered federal-only voter who has not produced DPOC from voting in presidential elections or by mail. *Id.* § 5 (adding Ariz. Rev. Stat. § 16-127). Those registered voters can continue to vote in congressional elections, but only by casting a ballot in person.

**Arizona cannot require applicants completing the Federal Form who seek to vote in federal elections to submit DPOC**

41. Arizona has already tried and failed to impose a DPOC requirement on federal-only voters. In 2004, Arizona voters approved Proposition 200, which imposed a DPOC requirement on all voter registration applicants regardless of whether they registered to vote using the Federal or State Form.

42. The United States Supreme Court ultimately held that Proposition 200 violated the NVRA. *See ITCA*, 570 U.S. at 20. The Court prohibited Arizona from requiring prospective voters using the Federal Form to submit anything more than the form requires.

43. Arizona thereafter unsuccessfully attempted to persuade the EAC to approve the addition of DPOC requirements on the State-specific instructions to the Federal Form. *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014), *cert. denied*, 576 U.S. 1055 (2015).

44. The EAC rejected those requests because it found that DPOC was not necessary to determine an applicant's citizenship. *Id.* at 1188.

45. During hearings on HB 2492, State nonpartisan legislative counsel warned Arizona legislators that the NVRA preempts HB 2492's DPOC requirement for federal-only voters and that imposing such a requirement would directly contravene the Supreme Court's decision in *ITCA*.

46. When voting to approve the bill in Committee, Vice-Chair of the Arizona House Rules Committee and House Speaker Pro Tempore Travis Grantham acknowledged that Congress and the Supreme Court had invalidated the State's past efforts to impose DPOC on federal-only voters, but stated that trying again "is a fight worth having."

47. Requiring DPOC of voters who have already completed the Federal Form's citizenship attestation also violates the Materiality Provision of Section 101. Arizona accepts that attestation is sufficient proof of citizenship for in-person voters in congressional elections and does not consider whether these voters have provided DPOC. Since providing DPOC is not material to establishing whether a voter can vote in-person or in congressional elections, it cannot be material to establishing whether a voter is qualified to vote by mail or in presidential elections.

**Birthplace Requirement**

48. Arizona law dictates the contents of the State Form that voters must complete to register as full-ballot voters. Ariz. Rev. Stat. § 16-152(A). Among other things, the State Form includes a space for a voter's state or country of birth. *Id.* § 16-

152(A)(7).

49. Prior to HB 2492, applicants did not need to complete the portion of the State Form asking for their state or country of birth to successfully register to vote in Arizona. *Id.* § 16-121.01(A). In fact, the State's current Elections Procedures Manual still provides that "Failure to provide state or country of birth . . . does not invalidate the State Form." Ariz. Sec'y of State, 2019 Elections Procedures Manual at 19 (Dec. 2019), *available at* Perma | azsos.gov. HB 2492 changed that. HB 2492 imposes new requirements on applicants who, for the first time, must provide their birthplace on the State Form. Under HB 2492, election officials are prohibited from processing otherwise-eligible applicants' voter registration forms if the applicants do not provide their place of birth. HB 2492 § 4 (amending Ariz. Rev. Stat. § 16-121.01(A)). "[A]ny application that does not include" the registrant's place of birth "is incomplete[.]" *Id.*

50. Upon receiving an application that is missing a place of birth, county elections officials must "notify the applicant" and "not register the voter until all of the information," including a place of birth, "is returned." *Id.* Accordingly, voters who do not provide a birthplace are not registered to vote.

51. A prospective registrant's birthplace is not material to determining that person's qualifications to vote.

52. Individuals born outside the country can nonetheless be native citizens if born to United States citizen parents or they may acquire citizenship through the naturalization process.

53. Birthplace is likewise immaterial to establishing a registrant's residency.

Where an individual was born 18 or more years before attempting to register to vote bears no connection to where that individual resides today.

54. Nor does birthplace help identify a voter. The State of Arizona was able to identify voters prior to HB 2492's passage without requiring the voters' birthplace.

55. By requiring rejection of State Forms that lack a birthplace but are otherwise complete, HB 2492 mandates rejection of records or papers relating to application or registration requisite to voting based on errors or omissions that are not material to determining whether a voter is qualified to vote.

56. Rejection of registration applications based on these immaterial errors or omissions will deny eligible individuals the right to vote, and therefore violates the Materiality Provision of Section 101.

**Citizenship Checkbox Requirement**

57. HB 2492 also requires election officials to reject registration applications that lack a checkmark indicating citizenship. *Id.* Upon receiving an application without a checkmark, county elections officials must "notify the applicant" and "not register the voter until all of the information," including the checkmark, "is returned." *Id.*

58. This requirement applies even to applications where the applicants have already attested to their citizenship under penalty of perjury, and to applications accompanied by DPOC, which HB 2492 itself describes as "satisfactory evidence of citizenship." HB 2492 § 1 (amending Ariz. Rev. Stat. § 16-101).

59. For voters who submit DPOC, this checkmark has no bearing on whether they are qualified to vote. Instead, the checkmark provision amounts only to a technical

requirement that voters be able to read and precisely follow instructions on how to fill out a form.  A voter's ability to read and follow such instructions is not material to that voter's qualifications to vote.

60. By requiring State and Federal Forms that are accompanied by DPOC to be rejected if they lack a checkmark in the citizenship box, HB 2492 again mandates rejection of records or papers relating to application or registration requisite to voting based on errors or omissions that are not material to a voter's qualifications.

61. Such rejections deny qualified individuals the right to vote.

## FIRST CAUSE OF ACTION

62. The United States realleges and incorporates by reference the allegations set forth above.

63. Section 6 of the NVRA requires Arizona to register to vote for all elections for federal office, including presidential elections, all qualified applicants who submit valid and complete Federal Forms.  Those Forms preclude Arizona from requiring an applicant to submit DPOC as a prerequisite to voting in elections for federal office, including presidential elections.

64. HB 2492 violates Section 6 of the NVRA because it requires federal-only applicants to provide more than is necessary—in this case, DPOC—to prove their eligibility to vote in presidential elections or vote by mail.

65. Unless enjoined by order of this Court, Defendants will continue to violate the NVRA by implementing and enforcing HB 2492's DPOC requirements for federal-only voters.

**SECOND CAUSE OF ACTION**

66. The United States realleges and incorporates by reference the allegations set forth above.

67. The Materiality Provision of Section 101 of the Civil Rights Act of 1964 prohibits state officials from rejecting registration applications because of errors or omissions that are not material to determining an individual's qualifications to vote. 52 U.S.C. § 10101(a)(2)(B). Section 4 of HB 2492 violates the Materiality Provision by barring election officials from registering a prospective voter if the voter's application for registration on the State Form does not include the voter's birthplace. An applicant's place of birth is not material to determining whether that applicant meets Arizona's voter qualification requirements. *See* Ariz. Const. art VII, § 2, cl. A; Ariz. Rev. Stat. § 16-101.

68. Section 4 of HB 2492 further violates the Materiality Provision by barring election officials from registering prospective voters who have already provided DPOC if those voters do not also check a box on the State or Federal Form indicating that they are citizens. Whether voters who have provided DPOC but who, through error or omission, have not followed instructions relating to this checkbox is not material to determining whether those voters meet Arizona law's qualifications to vote.

69. Section 4 of HB 2492 also violates Section 101 by barring election officials from allowing prospectively-registered federal-only voters to vote in presidential elections or to vote by mail with an early ballot if they do not provide DPOC. Such voters may only vote in congressional elections in person. Whether voters have provided DPOC, in addition to an attestation of citizenship on the Federal Form, is not material to

determining whether they are qualified to vote in presidential elections or vote by mail with an early ballot.

70. Finally, Section 5 of HB 2492 violates Section 101 by barring already-registered federal-only voters from voting in presidential elections or voting by mail unless they submit DPOC. Whether voters have provided DPOC once they have already registered using the Federal Form is not material to determining whether they are qualified to vote in presidential elections or by mail with an early ballot.

71. Unless enjoined by order of this Court, Defendants will continue to violate Section 101 by implementing and enforcing Sections 4 and 5 of HB 2492.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order:

(1) Declaring that Sections 4 and 5 of House Bill 2492 violate Section 6 of the National Voter Registration Act of 1993, 52 U.S.C. § 20505(a)(1);

(2) Declaring that Sections 4 and 5 of House Bill 2492 violate Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

(3) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Sections 4 and 5 of House Bill 2492 that violate Section 6 of the National Voter Registration Act of 1993, 52 U.S.C. § 20505(a)(1);

(4) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Sections 4 and 5 of House Bill 2492 that violates Section 101 of the Civil Rights Act of 1964, 52 U.S.C.

§ 10101(a)(2)(B);

(5) Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's order by state, county, and local authorities administering the State's electoral processes;

(6) Granting such additional relief as the interests of justice may require.

Date: July 5, 2022  Respectfully submitted,

| GARY M. RESTAINO | KRISTEN CLARKE |
|---|---|
| United States Attorney | Assistant Attorney General |
| District of Arizona | Civil Rights Division |

*/s/ Emily R. Brailey*
T. CHRISTIAN HERREN, JR.
RICHARD A. DELLHEIM
EMILY R. BRAILEY
L. BRADY BENDER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530